Bradbury, J.
The counts of the indictment held to be insufficient to charge an offense, read as follows:
Second count — The jurors of the grand jury of the state of Ohio, within and for the body of the county of Lake, impaneled, sworn and charged to inquire of crimes and offenses committed within said county of Lake, in the name and by the authority of the state of Ohio, on their oaths, do further find and present that Benjamin Robert Brown, late- of said county, on the eighth day of November, in the year of our Lord one thousand eight hundred and eighty-five, with force and arms, in said county of Lake, and state of Ohio, being then and there an unmarried man, did com *104 mit fornication with Rose Cramer, by then and there unlawfully and feloniously having sexual intercourse with the said Rose Cramer, the said Benjamin Robert Brown being then and there the uncle of the said Rose Cramer, and the said Rose Cramer being then and there the niece of the said Benjamin Robert Brown, and the said Benjamin Robert Brown and the said Rose Cramer then and there having knowledge of their relationship, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Ohio.
Fifth count — The jurors of the grand jury of the state of Ohio, within and for the county of Lake, impaneled, sworn and charged to inquire of crimes and offenses committed within said county of Lake, in the name and by the authority of the state of Ohio, on their oaths, do further find and present that Benjamin Robert Brown, late of said county of Lake, on the sixth day of January, in the year of our Lord one thousand eight hundred and eighty-six, with force and arms in said county of Lake and state of Ohio, being then and there a married man, did commit adultery with Rose Cramer, by then and there unlawfully and feloniously having sexual intercourse with said Rose Cramer, the said Rose Cramer being then and there the niece of the said Benjamin Robert Brown, the said Benjamin Robert Brown and the said Rose Cramer being then and there persons nearer of kin by consanguinity than cousins, the said Benjamin Robert Brown and the said Rose Cramer then and there having knowledge of their relationship, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Ohio.
The offense intended fcrbe charged by each of these two counts is a violation of section 7019 Rev. Stats. That section provides; sec. 7019, “Persons nearer of kin by consanguinity or affinity than cousins, having knowledge of their relationship, who commit adultery or fornication together, shall be imprisoned.....”
The court of common pleas held that neither count charged an offense under tins section. The particular averment, or *105 averments, the omission of which, in the opinion of that court, ■were fatal to these counts, have not been pointed out to this court, no brief having been filed in support of the rulings of which complaint is made; but we are not left to conjecture, wholly, respecting them, for the propositions combatted by the prosecuting attornej' in his brief indicate at least his understanding of what they were, though he fails to state them in direct terms.
However, after a careful examination of this brief and the record in the case, we yet have some doubts respecting the particular defects or omissions, which the court of common pleas held to be fatal, and therefore have carefully examined the two counts in question, with a view to ascertain what, if any, necessary averment or averments were omitted. From the argument submitted by the prosecuting attorney, it seems some doubt was entertained by the court of common pleas respecting the sufficiency of a single adulterous act to constitute the offense of incest, one act only, being charged in each of the counts. That one such act is sufficient, is established, we think, by the case of Barnhouse v. The State, 31 Ohio St. 39. It is true the statute in force, when that case arose, prohibited “ sexual intercourse ” between parties within certain degrees of kinship (S. & C. 405, sec. 8), while the statute in force when the offense charged against the defendant was committed, prohibits “ adultery or fornication ” within the prohibited degrees (sec. 7019 Rev. Stats.). But there is nothing in this change of phraseology to indicate a purpose to require a series of acts, of cohabiting together, to constitute incest. A single act of unlawful sexual intercourse falls within the definition of “ adultery ” or “fornication,” according as the party is married or not. ’ Bouvier, 92, 606; 1 Am. & Eng. Encyclopedia of Law, 209, and cases there cited. And that the words were used in this sense by the legislature in declaring what should constitute incest, clearly appears, when sec. 7019 is compared with sec. 7020. The latter section prescribes in direct terms that the party shall “cohabit” with another in a state of adultery or fornication to constitute an offense under it; but in the section now under con *106 sideration (7019) no such, word is found. The two sections are in immediate juxtaposition, were passed at the same time, and are nearly allied. This makes the omission of the word “ cohabit” from the section under consideration the more significant. It evinces a purpose to prohibit in the one case an act, in its very nature repulsive and shocking to every sense ■ of decency, while by the other section a demoralizing condition, a living together in an unlawful connection, is the thing to be prohibited; and appropriate language was adopted by the legislature, in each section, to attain the object in view.
The first count under consideration (No. 2 in the indictment), avers that the defendant and Rose Cramer, with whom he committed the sexual- act, were uncle and niece, respectively, to each other, but does not aver in direct terms that that relationship is nearer than that between cousins, nor does it show whether they were related by blood or affinity.
Is it necessary to aver in express terms that the kinship is nearer than that between first cousins, or will it suffice if the degree of it is averred, and it is one necessarily nearer than cousins? While the statute (section 7019), in general terms, prohibits the sexual act between persons “ nearer of kin.....than cousins,” it may well be doubted whether a general averment, in .the words of the statute, would be definite enough to satisfy the rules of criminal pleading. It would remain uncertain which of the several degrees of kinship, nearer than that between cousins, .was intended to be charged. Where, however, the precise degree of kinship is averred, all indefiniteness disappears. Nor is it for the jury to determine, in each particular case, whether the kinship between the parties to the act, be they father and daughter, brother and sister, or uncle and niece, is, or is nob, nearer than that between cousins. This is matter of law determinable by fixed principles applicable alike to every case. The kinship being averred to be that of uncle and niece, it was unnecessary to aver in addition, that which was matter of law, that they were nearer of kin than cousins. The authorities in support of this principle are innumerable; one only will be referred to. Bishop says, quoting from Buller, J.: “It is *107 one of the first principles of pleading, that you have only occasion to state facts, which must be done for the purpose of informing the court whose duty it is to declare the law arising upon those facts, and apprise the opposite party of what is meant to be proved in order to give him an opportunity to answer or traverse it.” 1 Bishop Crim. Procedure, § 329.
That the kinship between an uncle and his niece is nearer than that between cousins, within the Meaning of this statute, is clear, notwithstanding, that by the rules of the common law both were considered as standing in the same degree. The rule of the common law which accomplishes that result, relates to the descent of property, only; for, notwithstanding this rule of the common law, sexual commerce between uncle and niece in England is incestuous, while that between cousins is not. The law respecting incest, from the nature of the mischief to be prevented, necessarily regards the actual kinship of the parties as the predicate for its prohibitory enactments. Griffith v. Reed, 1 Hagg. Ecc. 195; Woods v. Woods, 2 Curt. Ecc. 516; Story on Conflict of Laws, §.§ 114 and 208. And the kinship between an uncle and niece is double that between cousins.
We hold, therefore, that within the meaning of sec. 7019, the kinship between uncle and niece is nearer than that between cousins.
While the question whether kinship by affinity should be protected, equally with that by consanguinity, is one about which different opinions may be held, (Story on Conflict of Laws, §§ 114, 115,) yet it falls within the province of the legislature to determine it; and that body having, in the same section and by the same words, prohibited the sexual act and prescribed the same penalty for its commission, whether the kinship be of the one class or the other, it is evident that no distinction was intended to be made between them, and that under the statute (see. 7019,) if the parties are nearer of kin than cousins, it is immaterial whether it be by consanguinity or affinity. Stuart v. The State, 39 Ohio St. 152. The supposed hardship of the law is much mitigated by the circumstance that kinship by affinity of the husband and wife. *108 respectively, with the family of the other terminates with the dissolution of the marriage. Noble v. The State, 22 Ohio St. 541.
The count now under consideration avers that the defendant is not married, so that, if the indictment must show affirmatively that he and the woman with whom the sexual act was committed were not husband and wife, it sufficiently does so; not, it is true, by a direct averment, but by one from which the fact appears by necessary implication. The averment that he was unmarried is equivalent to one that she was not his wife.
The fifth count of the indictment differs from the second, in that it avers the defendant to be married, and the sexual act to be adultery; and in addition to averring that the defendant and Rose Cramer were uncle and niece to each other, directly averred that they were “nearer of kin by consanguinity than cousin.”
The only question necessary to be determined in connection with .this count, that has not been decided in passing upon the sufficiency of the second count, is the necessity of the count negativing the marriage of the defendant and Rose Cramer.
By referring to the statute, section 7019, it will be 'observed that it contains no exception in favor of parties who are intermarried; the language is general, and comprehends them as well as the unmarried. Upon what principle, then, can an exception be engrafted in this section by judicial construction? We know of none. By the law of England the intermarriage of the parties did not render the connection any less incestuous. Blackmore v. Brider, 2 Phillimore 359; Woods v. Woods, 2 Curt. Ecc. 516. Bishop defines it as follows: “ Incest, where statutes have not modfied its meaning, is sexual commerce, either habitual or in a single instance, and either under a form of marriage or without it, between persons too nearly related in consanguinity or affinity to be entitled to intermarry.” Bish. St. Cr. §727. The act is little, if any, less repulsive to a correct sense of decency, and no less a violation of sound *109 public policy, because it is perpetrated by persons living together publicly under the form of marriage, than if done by them clandestinely and occasionally only. We hold, therefore, that by sec. 7019, Rev. Stats., sexual commerce, as between persons nearer of kin than cousins, is prohibited, whether they have gone through the form of intermarriage or not; nor is it material that the marriage was celebrated in a country where it was valid, for we are not bound, upon principles of comity, to permit persons to violate our criminal laws, adopted in the interest of decency and good morals, and based on principles of sound public policy, because they have assumed, in another state or country where it was lawful, the relation which led to the acts prohibited by our laws.
After the jury was empaneled and sworn, and the trial begun, the defendant’s counsel objected to the introduction of any evidence by the state, on the ground that the counts of the indictment upon which the state had elected to proceed, did not charge an offense. The court, adopting that view, refused to permit any evidence to go to the jury, and, upon motion of defendant’s attorney, ordered the jury to return a verdict of not guilty, and, thereupon, discharged him from custody. To all which, the prosecuting attorney excepted.
If the view taken by the court was correct, and no offense was charged, there was nothing of which he could be acquitted, and the verdict would be of no benefit to him. He could not plead it in bar of a subsequent prosecution. It would only benefit him in case the court had erred, and the indictment did charge an offense. As the case stood upon the holding of the court, no offense was charged against the defendant, and under those circumstances, the state had a right to require the jury to be discharged. There was nothing for them to do; the defendant was not charged before them with any offense, nor had any evidence against him been submitted for their consideration. The party was liable to be re-indicted, and again put upon trial, and if, upon the subsequent trial, the first indictment was held good, upon a *110 plea of former acquittal, the verdict would be an absolute bar. True, the defendant, upon the subsequent trial, if the jury had been discharged at the first one without rendering a verdict, might plead his former jeopardy; and if, upon that plea, the former indictment should be held good, it might avail him as effectually as a verdict of not guilty. Of this we express no opinion; for, whether the discharge of a jury, so made necessary by a ruling of the court, had on the defendant’s own motion, would, in case the first indictment upon a plea in bar should be held good, be a bar to a subsequent prosecution, it was the right of the state, under the circumstances, to prevent the rendition of a verdict of not guilty, which would be an undoubted bar, whatever effect might be given to the other.

Exceptions sustained.